IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **SCOTTIE E. MILLER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05cv00051 |
| | ) | **MEMORANDUM OPINION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Scottie E. Miller, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq*. (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Miller filed a previous application for DIB on or about June 4, 1999, which were denied initially, on reconsideration and following a hearing by an administrative law judge, ("ALJ"), by decision dated June 22, 2000. (Record, ("R."), at 20.) Miller pursued these claims no further. (R. at 20.) Miller then filed a subsequent application for DIB on or about November 2, 2000. (R. at 20.) These claims also were denied initially, on reconsideration and following a hearing by an ALJ by decision dated November 30, 2001. (R. at 20.) After this decision was affirmed by the Appeals Council, Miller filed an appeal in this court. By order entered March 22, 2004, the Commissioner's decision denying benefits was affirmed. *See Miller v. Barnhart*, No. 2:03-cv-00015 (Mar. 22, 2004).

Miller filed his current applications for DIB and SSI on or about April 24, 2002, alleging disability as of November 6, 1998, based on degenerative disc disease, an anxiety disorder, cervical spondylosis, numbness in the right leg and hip, neck and head pain and right arm numbness. (R. at 61-63, 71, 97, 217-29.) The claims were denied initially and upon reconsideration. (R. at 45-47, 50, 52-54, 232-34, 238-40.) Miller then requested a hearing before an ALJ. (R. at 55.) The ALJ held a hearing on

July 10, 2003, at which Miller was represented by counsel.[1] (R. at 264-85.)

By decision dated July 21, 2003, the ALJ denied Miller's claims. (R. at 19-24.) The ALJ found that Miller met the disability insured status requirements of the Act through the date of his decision. (R. at 22.) The ALJ found that Miller had not engaged in substantial gainful activity since November 6, 1998. (R. at 23.) The ALJ also found that the medical evidence established that Miller suffered from severe impairments, namely degenerative disc disease of the lumbar spine without evidence of herniation and estimated borderline to low average intellect, but he found that Miller did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Miller's allegations of disabling pain and other symptoms were not credible or supported by the documentary evidence. (R. at 23.) The ALJ found that Miller retained the residual functional capacity to perform light[2] work that did not require the performance of highly skilled or complex tasks. (R. at 23.) Thus, the ALJ found that Miller could not perform his past relevant work as a coal miner and a machine operator. (R. at 23.) The ALJ found that, based on Miller's age, education and past work experience and the testimony of a vocational expert, Miller could perform jobs existing in significant numbers in the national economy, including those of a hand packer, a sorter, an assembler, an inspector, an information clerk, a cashier

---

[1] At this hearing, the ALJ stated that he would consider only the period of time after the prior ALJ's hearing through the date of his decision. (R. at 267.) Thus, the relevant period of time for determining whether Miller is disabled is from December 1, 2001, through July 21, 2003.

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005).

-3-

and a clerk. (R. at 23.) Therefore, the ALJ found that Miller was not disabled under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued his decision, Miller pursued his administrative appeals, (R. at 14), but the Appeals Council denied his request for review. (R. at 7-11.) Miller then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Miller's motion for summary judgment filed October 14, 2005, and on the Commissioner's motion for summary judgment filed November 16, 2005.

## *II. Facts*

Miller was born in 1967, (R. at 61, 268), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Miller has an eighth-grade education and past work experience as a coal miner and a machine operator. (R. at 72, 77, 268.)

Miller testified that he failed the fifth and eighth grades, stating that he could read and write "some." (R. at 269.) He testified that he did not then-currently have a driver's license due to a third conviction for driving under the influence in 1991. (R. at 269.) However, he testified that it had been more than two years since he last drank. (R. at 269.) Miller testified that he previously worked in underground coal mining, but suffered a work-related injury to his low back in November 1998. (R. at 269-71.) He further testified that he worked as a machine operator in a textile mill. (R. at 270.)

Miller testified that he also had "bad dis[c]s" in his neck, but that he considered his back his most serious problem preventing him from working. (R. at 271.) He stated that his back pain radiated into his right leg and that he experienced numbness in his right leg. (R. at 271.) Miller testified that he sometimes experienced pain in his left leg as well. (R. at 271.) He stated that he had not undergone back surgery nor had it been recommended. (R. at 271.) Miller testified that his neck pain radiated into his shoulders and up into his head. (R. at 272.) He stated that he sometimes took medication for his headaches, but that it did not help much. (R. at 279.) He stated that he had undergone an MRI of his back the week prior to the hearing, the results of which were similar to a previous MRI, which showed degenerative disc disease. (R. at 272.) However, Miller stated that surgery was not recommended because it would not help his condition. (R. at 272-73.)

Miller testified that he was unable to perform yardwork like he could in the past, but he stated that he attended church services occasionally. (R. at 274.) He estimated that he could lift or carry items weighing up to five to 10 pounds, but could not do so for an eight-hour period due to back and leg pain. (R. at 275.) Miller rated his back pain as a nine to 10 on a scale from one to 10, with 10 being the worst pain. (R. at 275.) He stated that it dropped to a seven or eight occasionally. (R. at 276.) Miller testified that, in addition to medication, he tried to walk to alleviate his pain because he could not sit still for long periods of time. (R. at 276.) He testified that, at times, he could sit and stand for only approximately five minutes without interruption. (R. at 276.) Miller testified that he had used a back brace in the past, but that it did not help much. (R. at 277.) He stated that he had not undergone pain management courses or physical therapy. (R. at 277.) Miller testified that he did not

sleep well due to the pain. (R. at 277.) He further testified that his pain affected his appetite at times. (R. at 277-78.) Miller testified that he spent most of his time around his house because he did not feel like getting out much. (R. at 278.) He further stated that he was not sociable when he felt bad. (R. at 278.) Miller testified that his back and leg pain had worsened since the time of his previous hearing. (R. at 279.)

Miller also testified that he experienced anxiety and depression, for which he had seen Dr. Dar, a psychiatrist, since 1999. (R. at 273, 274.) He stated that Dr. Dar had prescribed medications for depression and anxiety. (R. at 275.)

Donna Bardsley, a vocational expert, also was present and testified at Miller's hearing. (R. at 281-84.) Bardsley classified Miller's past work as a coal miner as heavy[3] and unskilled and as a machine operator as medium[4] and semiskilled. (R. at 281.) Bardsley was then asked to assume a hypothetical individual of Miller's age, education and work history who could perform light work, who had borderline intelligence and who had a mental disorder restricting his ability to perform work-related activity consistent with the psychological evaluation completed by psychological examiner Miller and psychologist Spangler on May 13, 2003. (R. at 208-12, 281-82.) Bardsley testified that such an individual could perform the jobs of a hand packager, a sorter, an assembler, an inspector, an information clerk, a cashier

---

[3]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can perform heavy work, he also can perform medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2005).

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he also can perform light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2005).

-6-

and a clerk, all existing in significant numbers in the national economy. (R. at 282.) Bardsley testified that if Miller's testimony were deemed credible, he would not be able to perform any jobs. (R. at 283.) Bardsley was next asked to consider the same individual, but who had serious problems with the ability to handle work stresses. (R. at 283.) Bardsley testified that such an individual would be limited to the performance of low-stress jobs and noted that such a restriction would not eliminate the jobs previously mentioned. (R. at 283.) However, Bardsley testified that if an individual had no useful ability to deal with work stresses, even two to three times per week, he would not be able to perform any jobs. (R. at 283.) Finally, Bardsley testified that, based on Miller's testimony, he would be prevented from performing work based on his pain and the resulting problems with lifting, sitting and standing. (R. at 284.)

In rendering his decision, the ALJ reviewed records from Dr. Muhammad R. Javed, M.D.; Dr. Nasreen R. Dar, M.D., a psychiatrist; R.J. Milan Jr., Ph.D., a state agency psychologist; Eugenie Hamilton, Ph.D., a state agency psychologist; Dr. F. Joseph Duckwall, M.D., a state agency physician; Dr. F.M. Johnson, M.D., a state agency physician; Kathy J. Miller, M.Ed., a licensed psychological examiner; and Robert S. Spangler, Ed.D., a licensed psychologist. Miller's counsel submitted additional medical records to the Appeals Council from Dr. Matthew Cheng, M.D. and Dr. Dar.[5]

Miller saw Dr. Muhammad R. Javed, M.D., from August 1998 through

---

[5] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 7-11), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-7-

February 2003.[6] (R. at 102-66, 204-07.) Over the time period relevant to Miller's current claims, Miller reported lumbar and spinal tenderness. (R. at 102-64, 204-07.) Dr. Javed's diagnoses over this time period included degenerative lumbar disease, for which he prescribed medication. (R. at 102-66, 204-07.) Nonetheless, Dr. Javed's treatment notes during the relevant time period do not appear to reflect any objective findings evidencing a major musculoskeletal impairment. For instance, as the Commissioner notes in her brief, there is no evidence of muscle atrophy, decreased muscle strength, positive straight leg raising, disc herniation, abnormal gait or sensory or reflex loss. (R. at 102-66, 204-07.) Moreover, as the Commissioner further notes in her brief, there is no evidence that Dr. Javed recommended back surgery or physical therapy, that Miller was referred to an orthopaedic specialist or neurosurgeon or that he underwent any objective testing, such as a CT scan or a myelogram.

Miller saw Dr. Nasreen R. Dar, M.D., a psychiatrist, from August 1999 through October 2003. (R. at 167-75, 203, 253-63.) Over this time period, Miller complained of anxiety, difficulty sleeping and eating and an inability to deal with stress. (R. at 167-73.) Dr. Dar diagnosed Miller with a dysthymic disorder and prescribed various psychotropic medications, including Valium, Effexor, Paxil, Vistaril, Zoloft, Klonopin and Ambien. (R. at 167-73, 175, 203, 216, 262.) Dr. Dar consistently noted that, with medication, Miller was "doing fair emotionally," was eating and sleeping "fair," was in touch with reality and was able to relate. (R. at 167-73, 203, 216, 262.) She placed no restrictions on Miller's work-related mental abilities, nor did she recommend that Miller undergo any sort of mental health counseling over this time period.

---

[6]Dr. Javed's progress notes are handwritten and largely illegible.

On October 14, 2002, R.J. Milan Jr., Ph.D., a state agency psychologist, completed a Mental Residual Functional Capacity Assessment of Miller. (R. at 176-78.) Milan found that Miller was moderately limited in his ability to understand, remember and carry out detailed instructions. (R. at 176.) In all other categories, Milan found that Miller was not significantly limited, with the exception of the ability to make simple work-related decisions and the ability to ask simple questions or request assistance, for which he found no evidence of limitation. (R. at 176-77.) Milan noted that, although the medical evidence of record indicated borderline intellectual functioning, Miller's work history countered any indication of mental retardation or its equivalence. (R. at 178.) He further noted that Miller's anxiety condition was stable under maintenance treatment with a psychiatrist and that his mental allegations were not fully credible. (R. at 178.) Milan concluded that Miller retained the mental abilities to understand, remember and carry out simple work instructions under ordinary supervision with no significant limitations in concentration, persistence or pace, social interaction or adaptation. (R. at 178.) This assessment was affirmed by Eugenie Hamilton, Ph.D., another state agency psychologist, on January 29, 2003. (R. at 178.)

Milan also completed a Psychiatric Review Technique form, ("PRTF"), concluding that Miller suffered from mental retardation and an anxiety-related disorder with a co-existing nonmental impairment and that a residual functional capacity assessment was necessary. (R. at 179-93.) Milan found that Miller was only mildly restricted in his activities of daily living, experienced only mild difficulties in maintaining social functioning, suffered moderate difficulties in maintaining concentration, persistence or pace and had suffered no episodes of decompensation.

(R. at 189.)

The following day, Dr. F. Joseph Duckwall, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment, finding that Miller could perform light work. (R. at 194-202.) Dr. Duckwall imposed no postural, manipulative, visual, communicative or environmental limitations. (R. at 197-99.) He found Miller's allegations not credible. (R. at 200.) This assessment was affirmed by Dr. F. M. Johnson, M.D., another state agency physician, on January 29, 2003. (R. at 202.)

On May 13, 2003, Kathy J. Miller, M.Ed., a licensed psychological examiner, and Robert S. Spangler, Ed.D., a licensed psychologist, completed a psychological evaluation of Miller. (R. at 208-12.) The examiners noted that Miller appeared socially confident and comfortable during the interview and that he generally understood the instructions for each task and demonstrated good concentration during the evaluation. (R. at 208.) Miller stated that Zoloft and alprazolam helped his nerves "some." (R. at 209.) He reported that his pain caused difficulty with concentration. (R. at 209.) Miller stated that he was hospitalized in 1983 at St. Alban's when he went through a "bad spell." (R. at 209.) However, Miller was unable to explain more specifically the reason for this hospitalization, and the record on appeal contains no evidence to substantiate this claim.

The examiners noted that Miller was alert and fully oriented and that his mood and affect were within normal limits. (R. at 210.) His speech was somewhat slowed, but he complained of fatigue, noting that he was unable to sleep the prior evening. (R.

-10-

at 210.) Miller stated that his memory varied with his pain. (R. at 210.) The examiners noted that Miller appeared to be functioning within the upper limits of borderline intellectual functioning to the lower limits of low average intelligence. (R. at 210.)

Miller reported watching television, visiting his parents next door, fishing a couple of times each month with a friend, sometimes washing dishes and vacuuming, socializing with church members and family members, attending church two or three times monthly, mowing the yard with a riding mower when his pain allowed and sharing the household financial management responsibilities with his wife. (R. at 210.) He further reported managing his own medication and caring for his hygiene daily. (R. at 210.)

The examiners rated Miller's social skills as adequate, noting that he was polite and cooperative and communicated in a clear and coherent manner. (R. at 210.) They opined that he had the judgment necessary to handle his own financial affairs. (R. at 211.) Miller was diagnosed with an anxiety disorder, not otherwise specified, mild, under fair pharmacological control, and low average intellectual functioning. (R. at 211.)

Miller and Spangler also completed a Mental Assessment Of Ability To Do Work-Related Activities, finding that Miller had a fair ability to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex job instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 213-15.) In all other areas, Miller's abilities were

-11-

deemed to be good. (R. at 213-14.)

Miller saw Dr. Matthew Cheng, M.D., from September 30, 2003, through November 18, 2003. (R. at 246-47, 249-51.) On September 30, 2003, Miller was diagnosed with degenerative joint disease and was prescribed Percocet and Vioxx. (R. at 247.) On October 27, 2003, Dr. Cheng noted that Miller had undergone two epidural injections. (R. at 246.) He was again diagnosed with degenerative joint disease and was continued on medication. (R. at 246.) On November 10, 2003, his diagnosis and medications remained unchanged. (R. at 246.) Dr. Cheng completed a Physical Assessment Of Ability To Do Work-Related Activities on November 18, 2003, finding that Miller could occasionally lift items weighing up to 10 pounds and could stand and/or walk for a total of four hours in an eight-hour day, but that he could do so for only one hour without interruption. (R. at 249-51.) Likewise, he found that Miller could sit for a total of four hours in an eight-hour workday, but could do so for only one hour without interruption. (R. at 250.) Dr. Cheng concluded that Miller could occasionally climb, kneel, balance and crawl, but could never stoop or crouch. (R. at 250.) He further concluded that Miller's abilities to handle and to push and/or pull were affected by his impairments. (R. at 250.) Dr. Cheng found that Miller should not work around moving machinery, chemicals, dust, fumes and humidity. (R. at 251.) Dr. Cheng noted that he was basing his findings on Miller's occasional back spasms, deconditioning and lumbar disc disease. (R. at 249-50.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI

claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2005); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 21, 2003, the ALJ denied Miller's claims. (R. at 19-24.) The ALJ found that Miller met the disability insured status requirements of the Act through the date of his decision. (R. at 22.) The ALJ found that Miller had not engaged in substantial gainful activity since November 6, 1998. (R. at 23.) The ALJ

-13-

also found that the medical evidence established that Miller suffered from severe impairments, namely degenerative disc disease of the lumbar spine without evidence of herniation and estimated borderline to low average intellect, but he found that Miller did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Miller's allegations of disabling pain and other symptoms were not credible or supported by the documentary evidence. (R. at 23.) The ALJ found that Miller retained the residual functional capacity to perform light work that did not require the performance of highly skilled or complex tasks. (R. at 23.) Thus, the ALJ found that Miller could not perform his past relevant work as a coal miner and a machine operator. (R. at 23.) The ALJ found that, based on Miller's age, education and past work experience and the testimony of a vocational expert, Miller could perform jobs existing in significant numbers in the national economy, including those of a hand packer, a sorter, an assembler, an inspector, an information clerk, a cashier and a clerk. (R. at 23.) Therefore, the ALJ found that Miller was not disabled under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See*

-14-

*Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Miller argues that the ALJ erred by failing to find that his anxiety disorder was severe. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-7.) Miller further argues that the ALJ erred in analyzing his allegations of disabling pain. (Plaintiff's Brief at 7-9.) Finally, Miller argues that the ALJ erred by failing to consider the effect of his impairments in combination on his ability to perform work-related activities. (Plaintiff's Brief at 9.)

Miller argues that the ALJ erred by failing to find that his anxiety disorder was severe. (Plaintiff's Brief at 6-7.) Based on my review of the record, I find that substantial evidence supports the ALJ's finding that Miller's anxiety disorder was not severe within the meaning of the Act. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2005). The Fourth Circuit held in *Evans v. Heckler*, that """[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work

experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

Here, there is no evidence contained in the record showing that Miller's anxiety disorder had more than a minimal effect on his work-related abilities. For instance, Dr. Dar, Miller's treating psychiatrist, consistently noted that Miller was "doing fair emotionally," was eating and sleeping "fair," was in touch with reality and was able to relate. (R. at 167-73, 203, 216, 262.) Although she placed him on various medications, including Valium, Effexor, Paxil, Vistaril, Zoloft, Klonopin and Ambien, she did not see him or refer him to anyone else for any type of mental health counseling. Furthermore, Dr. Dar's treatment notes reflect the imposition of no restrictions on Miller's work-related mental abilities. Likewise, the state agency psychologists imposed no more than minimal restrictions on Miller's work-related mental abilities. For instance, in October 2002, psychologist Milan concluded that Miller was moderately limited in his ability to understand, remember and carry out detailed instructions. (R. at 176.) In all other categories, Milan found that Miller was not significantly limited, with the exception of the ability to make simple work-related decisions and the ability to ask simple questions or request assistance, which he found no evidence of limitation. (R. at 176-77.) He further noted that Miller's anxiety condition was stable under maintenance treatment with a psychiatrist and that his mental allegations were not fully credible. (R. at 178.) Milan concluded that Miller retained the mental abilities to understand, remember and carry out simple work instructions under ordinary supervision with no significant limitations in concentration, persistence or pace, social interaction or adaptation. (R. at 178.) This

assessment was affirmed by state agency psychologist Hamilton on January 29, 2003. (R. at 178.)

Milan also completed a PRTF, concluding that Miller was only mildly restricted in his activities of daily living, experienced only mild difficulties in maintaining social functioning, suffered moderate difficulties in maintaining concentration, persistence or pace and suffered no episodes of decompensation. (R. at 179-93.) Likewise, psychological examiner Miller and psychologist Spangler diagnosed Miller with an anxiety disorder, not otherwise specified, mild, under fair pharmacological control, and low average intellectual functioning. (R. at 211.) Miller and Spangler also completed a mental assessment, finding that Miller had a fair ability to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex job instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 213-15.) In all other areas, Miller's abilities were deemed to be good. (R. at 213-14.)

I note that despite Miller's contention that he was hospitalized in 1983 at St. Alban's when he was going through a "bad spell," he was unable to specify what he was hospitalized for and there is no evidence contained in the record to substantiate this claim.

For all these reasons, I find that substantial evidence supports the ALJ's finding that Miller's anxiety disorder was not severe because it resulted in no more than minimal restrictions on Miller's ability to perform basic work activities.

-17-

Miller also argues that the ALJ erred in analyzing his allegations of disabling pain. (Plaintiff's Brief at 7-9.) Based on my review of the record, I reject Miller's argument on this issue. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges he suffers....
]
76 F.3d at 595.

Based on my review of the ALJ's decision, I find that the ALJ properly considered Miller's subjective complaints of pain and found that they were not

-18-

credible. (R. at 23.) Although the ALJ found that Miller suffered from severe degenerative disc disease, he found that Miller did not have a medically determinable impairment or combination of impairments that would be expected to result in severe and disabling pain. (R. at 22.) In reaching this conclusion, the ALJ correctly noted that Miller had received no aggressive treatment, even of a conservative nature such as physical therapy, at any time pertinent to the decision. (R. at 22.) The ALJ further noted that there was no objective evidence of nerve root compression and that Miller had received no treatment from a specialist for his back symptoms at any time relevant to the decision. (R. at 22.) Finally, the ALJ noted that Miller's self-reported activities, including fishing, washing dishes, vacuuming, attending church and mowing grass on a riding mower, were consistent with the performance of light work. (R. at 22.) In addition to these reasons enumerated by the ALJ, I note that the record is void of any evidence of muscle atrophy, decreased muscle strength, positive straight leg raising, disc herniation, abnormal gait or sensory or reflex loss to evidence the presence of a major musculoskeletal impairment. Based on these reasons, I find that substantial evidence exists to support the ALJ's finding on this issue.

Finally, Miller argues that the ALJ erred by failing to consider his impairments in combination in finding him not disabled. (Plaintiff's Brief at 9.) Again, I disagree. It is well-settled that to determine "whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citing *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)). In his decision, the ALJ thoroughly considered both Miller's physical and mental

-19-

Case 1:05-cv-00051-PMS   Document 16   Filed 11/22/05   Page 19 of 20   Pageid#: 70

impairments and their effect on his ability to work. The ALJ first analyzed all of the medical evidence regarding Miller's physical impairments before considering his mental impairments. He concluded that given both Miller's physical and mental impairments, Miller, nonetheless, had the residual functional capacity to perform work that existed in significant numbers in the national economy. The ALJ concluded that Miller had both a severe physical impairment, as well as a severe mental impairment, further evidencing that he considered Miller's impairments in combination. For these reasons, I find that substantial evidence supports the ALJ's finding that Miller is not disabled.

## IV. Conclusion

For the foregoing reasons, Miller's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED: This 22nd day of November 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE